[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11347
Non-Argument Calendar
_____

Agency No. A216-412-438


VLADIMIR VLADIMIROVICH TRETIAKOV,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 20, 2020)

Before WILLIAM PRYOR, JORDAN, and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner Vladimir Vladimirovich Tretiakov, a native of Russia, seeks review of the final order of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Tretiakov claims that he suffered past persecution in Russia based on several incidents of mistreatment against himself and an attack against his father. Additionally, Tretiakov argues that he established a well-founded fear of future persecution.

## I.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Where the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent. *Id.*

On appeal from the BIA's decision, we review legal determinations *de novo*. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010). Because we review factual determinations under the substantial evidence test, "we must 'affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (quoting *Al Najjar*, 257 F.3d at 1283-84). "[W]e review the record evidence in the light most favorable to the

2

agency's decision and draw all reasonable inferences in favor of that decision." *Id.* (quotation omitted). Hence, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id*. (quotation omitted).

To establish eligibility for asylum, an applicant has the burden of proving that he is a "refugee," which is defined as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

*Diallo*, 596 F.3d at 1332; *see also* Immigration and Nationality Act ("INA") § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To meet this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. *Diallo*, 596 F.3d at 1332 (citing 8 C.F.R. § 208.13(a)-(b); *Al Najjar*, 257 F.3d at 1287).

Regarding the well-founded fear inquiry, an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable. *See Al Najjar*, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." *Id*.

3

Usually, the objective prong can be satisfied either by establishing past persecution or by showing that the applicant has a "good reason to fear future persecution." *Id.* "[A]n applicant establishes a well-founded fear when he establishes that there is 'a reasonable possibility he or she would be singled out individually for persecution' or that he is a member of, or is identified with, a group that is subjected to a pattern or practice of persecution." *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (quoting 8 C.F.R. § 208.13(b)(2)(iii)).

Persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Diallo*, 596 F.3d at 1333 (quotation marks omitted); *see also Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (holding that death threats and threatening anonymous phone calls were merely harassment and, without more, did not qualify as persecution). For example, we held that the record compelled a finding of persecution where a man had been beaten twice, threatened, and kidnapped for 18 days. *See Ruiz v. Gonzales*, 479 F.3d 762, 763-64, 766 (11th Cir. 2007) (evaluating a claim for withholding of removal). In another case, we found that the record compelled a finding of past persecution where the petitioner was repeatedly threatened, twice physically attacked, terrorized by the torture and murder of a family friend who refused to disclose information about the petitioner, and was eventually kidnapped and beaten, only to

4

narrowly escape with her life. *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008–09 (11th Cir. 2008). However, verbal threats of imprisonment combined with a "minor" beating do not compel a finding of past persecution. *See Djonda*, 514 F.3d at 1174. Furthermore, employment discrimination that "stops short of depriving an individual of a means of earning a living does not constitute persecution." *Yi Feng Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1291 (11th Cir. 2006) (quoting *Barreto-Claro v. U.S. Att'y Gen.*, 275 F.3d 1334, 1340 (11th Cir. 2001)); *see Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1156 (11th Cir. 2014) (noting that economic mistreatment rises to past persecution if it causes "severe economic disadvantage," meaning it "reduce[s] the alien 'to an impoverished existence'") (quotation omitted).

In determining whether an alien has suffered past persecution, the factfinder must consider the cumulative effect of the allegedly persecutory incidents. *De Santamaria*, 525 F.3d at 1008 (citing *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007)). Threats or harm to a petitioner's family member do not constitute evidence of persecution against the petitioner "where there has been no threat or harm directed against the petitioner." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013); *see also De Santamaria*, 525 F.3d at 1009 n.7 (holding that harm to another person may constitute evidence of persecution against a petitioner where the harm "concomitantly threatens the petitioner").

5

Serious physical injury is not required to prove past persecution where the petitioner demonstrates repeated threats combined with other forms of severe mistreatment.  *De Santamaria*, 525 F.3d at 1009.

To qualify for withholding of removal under the INA, an alien must show that if returned to his country, the alien's life or freedom would be threatened on account of, *inter alia*, his political opinion.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  An alien seeking withholding of removal must show that it is "more likely than not" he will be subject to persecution based on a protected ground if returned to his country.  *Ruiz*, 479 F.3d at 766.  To establish eligibility for CAT relief, the alien must show that he "more likely than not" will be tortured upon his return to his home country by or with the acquiescence of government officials. 8 C.F.R. § 208.16(c)(2).

## II.

Tretiakov makes several arguments to persuade this court to reverse the BIA's affirmance of the IJ's denial of his application for asylum.  He claims that he suffered past persecution due to his political opinion and these instances were manifested by his diminished career opportunities, an attack perpetrated on him and his father, and his arrest and beatings by the Russian police because of his attendance at an anti-corruption rally.  Tretiakov argues that, even if each instance he cites does not amount to past persecution alone, all three instances together establish past

6

persecution.  He urges our application of the totality of the circumstances test to conclude that he suffered past persecution.  *See Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235–36 (11th Cir. 2013) (viewing the cumulative effect of all alleged instances of persecution to determine if they demonstrate past persecution).

The record here does not compel a finding of past persecution where Tretiakov was briefly detained and suffered two minor beatings with no substantial injuries and experienced a lack of professional or creative advancement but did not lose his job.  Substantial evidence supports the finding that the attack on his father was not based on Tretiakov's political opinion, and Tretiakov offered no evidence to support his speculation that the attack was linked to a YouTube exposé released three weeks earlier.

In addition, when considering these instances in their totality, we conclude that they do not amount to persecution based on a protected ground.  First, our case law states that diminished employment opportunities do not necessarily constitute past persecution.  *See Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1291 (11th Cir. 2006).  The record shows that Treviakov may have missed desired employment opportunities, but he was still employed.  *See Mu Ying Wu*, 745 F.3d at 1156 (economic mistreatment rises to the level of persecution if it reduces the petitioner to an "impoverished existence").  Second, Treviakov's mere speculation that the attack on him and his father was politically motivated due to the proximity of time

7

between the attack and the release of the YouTube video does not compel the conclusion that the attack was politically motivated.   Moreover, there is contradictory testimony in the record that the attack on him and his father was politically motivated.  Third, Tretiakov's arrest and two minor beatings following the anti-corruption rally do not constitute past persecution.  *See Djonda*, 514 F.3d at 1174 (finding that minor scratches and bruises do not rise to the level of past persecution).   Hence, even under the cumulative effect test, Treviakov's alleged incidents fail to reach the level of past persecution required by law.  *See Shi*, 707 F.3d at 1235 (stating that past persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty") (citation omitted).

Nor does the record compel a finding that Tretiakov has a reasonable possibility of suffering future political persecution where he was only briefly detained one time and was released without being criminally or civilly charged. Although the police were looking for him after he left Russia, they did not threaten him.  In actuality, the police may have wanted to question him regarding their investigation on the attack on his father.  Moreover, substantial evidence supports the BIA's determination that Tretiakov was insufficiently prominent, either

8

politically or professionally, that the Russian government would be likely to single him out for persecution.

Consequently, substantial evidence supports the finding that he did not meet his burden of proof for asylum, or the more stringent burden of proof required for withholding of removal.  Similarly, substantial evidence supports the BIA's conclusion that Tretiakov is not eligible for CAT relief because it was not more likely than not that the Russian government would target him for torture. Accordingly, for the aforementioned reasons, we deny Tretiakov's petition for review.

**PETITION DENIED.**